IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOHN A. JENKINS,
    Plaintiff,
    v.

JAMES GAITHER, et al.,
    Defendants.

CIVIL ACTION FILE
NO. 1:11-CV-2647-TWT

ORDER

This is a civil rights action. It is before the Court on the Defendants' Motion for Summary Judgment [Doc. 22]. For the reasons set forth below, the Court GRANTS the Defendants' Motion for Summary Judgment.

I. Background

On October 13, 2009, Plaintiff John A. Jenkins had dinner and one beer at 6:00 p.m. He had no other food or alcohol the rest of the evening. (Jenkins Dep., at 47-48, 50-51.) Later, Jenkins was driving home along Highway 42, in Butts County, Georgia, when a concerned citizen called Butts County 911 at 10:08 p.m. to report his concern with Jenkins' driving. (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at Ex. A.) The dispatcher relayed over the radio to Butts County Deputy Sheriff James Gaither that the caller described the vehicle as "all over the roadway." (Id.) The

caller described the vehicle and stated the license plate number, and stayed behind the vehicle and periodically relayed his location until Deputy Gaither arrived in the area at 10:10 p.m. (Id.) When Deputy Gaither reached the scene, the caller pulled over and Deputy Gaither trailed Jenkins' vehicle for a while without turning on his blue lights. (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at Ex. C.) At one point Deputy Gaither saw that Jenkins' vehicle floated left towards the centerline, and his tires came very close to connecting with the centerline. (Id.)

Deputy Gaither then turned on his blue lights and pulled over the Plaintiff. (Id.) Deputy Gaither asked the Plaintiff to get out of the vehicle and come to the rear of the vehicle. (Id.) After the Plaintiff gave Deputy Gaither his license, Deputy Gaither stepped up next to the Plaintiff and the Plaintiff covered his mouth. (Id.) Deputy Gaither could have reasonably construed this action as motivated by the Plaintiff's desire to shield the smell of alcohol on his breath. Deputy Gaither then had the following exchange with the Plaintiff:

> Gaither: Have you had anything to drink tonight, sir?
> Jenkins: No.
> Gaither: None, whatsoever?
> Jenkins: Nope.
> Gaither: Do you drink any alcoholic beverages?
> Jenkins: I do.
> Gaither: You do. Okay...so, when was the last time you consumed alcohol?

> Approximately five seconds pass during which Plaintiff looks at his

watch, sways his hips forward, and replies:
Jenkins: 'Bout four hours ago.

After Deputy Gaither asked Jenkins to perform a field sobriety test and Jenkins was uncooperative, Deputy Gaither called Deputy Acosta to the scene. (Id.) Deputy Acosta spoke to Deputy Gaither about what Deputy Gaither had observed, and then asked 911 for the name of the caller; she replied, "DNR 319." DNR 319 is Corporal Wil Smith, a DNR officer known to the Defendants. Deputy Acosta telephoned Corporal Smith and asked what Corporal Smith observed. Corporal Smith stated that the Plaintiff was weaving back and forth and failed to maintain his lane. (Id.)

At this time, Deputies Acosta and Gaither conferred and decided to arrest the Plaintiff for "driving under the influence of alcohol and failure to maintain lane." (Id.) The Plaintiff was transported to Butts County jail and was administered a blood/alcohol test. (Jenkins Dep., at 91.) The test was negative for alcohol and the charges against Jenkins were dropped. On August 11, 2011, the Plaintiff filed the Complaint in this Court. Jenkins seeks money damages for violation of his Fourth Amendment rights for false arrest and false imprisonment. On July 16, 2012, the Defendants filed this Motion for Summary Judgment.

## II. Motion for Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

42 U.S.C. § 1983 provides a private cause of action for persons whose rights under the federal Constitution have been violated under color of state law. The statute confers no substantive rights itself. Instead, it provides "a method of vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989). To establish a Section 1983 violation, plaintiffs must show (1) conduct committed by a person acting under color of state law (2) that deprived them of rights, privileges or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor,

451 U.S. 527, 535 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986); see also Duke v. Massey, 87 F.3d 1226, 1231 (11th Cir. 1996).

In response to the Plaintiff's claim that the Defendants deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States, the Defendants have asserted the defense of qualified immunity. Qualified immunity shields government officials executing discretionary responsibilities from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991), citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law to be decided by the Court. The test for qualified immunity is one of "objective-reasonableness" in evaluating the conduct of the government official claiming its protection. "[A]ll but the plainly incompetent or those who knowingly violate the law" find protection in qualified immunity. Id., citing Malley v. Briggs, 475 U.S. 335, 341 (1986).

In Rich v. Dollar, 841 F.2d 1558 (11th Cir. 1988), the Eleventh Circuit adopted a two part analysis for assessing the qualified immunity defense. First, the defendant public official must prove that he acted within the scope of his discretionary authority when the challenged conduct occurred. If the defendant satisfies this part, the burden shifts to the plaintiff to show that the defendant public official's conduct violated

clearly established law. Id. at 1563-64. In general, the Eleventh Circuit allows a broad and expansive scope of protection afforded by qualified immunity:

> That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities. . . Unless a government agent's act is so obviously wrong, in the light of preexisting law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit. Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity.

Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc) (citations and footnotes omitted). In Lassiter, the Eleventh Circuit expounded that for a law to be clearly established in the qualified immunity context, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*." Id. at 1150 (emphasis in original).

The Defendants have clearly established the first prong of the test for qualified immunity. A government official can prove he acted within the scope of his discretionary authority by showing "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." Rich, 841 F.2d at 1564; Barker v. Norman, 651

F.2d 1107, 1121 (5th Cir. 1981).[1] The Defendants responded to a call regarding a dangerous driver, investigated, and made an arrest. These were all actions carried out in the performance of their normal job duties and were within their authority as Butts County Georgia Deputy Sheriffs. Accordingly, it can only be concluded that they were acting within the scope of their discretionary authority when they made the arrest. The Plaintiff does not appear to argue this point. (See Compl. ¶ 3.)

Now that the Defendants have shown that their actions were carried out in performance of their discretionary duties, the burden shifts to the Plaintiff to show that the Defendants' actions violated established constitutional law that existed at the time the challenged actions transpired. The Plaintiff contends that both the initial stop and the arrest were unconstitutional. "[A]n officer may, consistent with the Fourth Amendment, conduct a brief investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). In the context of qualified immunity, "the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop." Jackson v. Sauls, 206 F.3d 1156, 1166

---

[1] In Bonner v. City of Pritchard, 661 F.2d 1206, 1207 (11 th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

(11th Cir. 2000). In Georgia, a motorist cannot drive a vehicle while under the influence of alcohol to the extent that it is less safe for the person to drive, and must drive "as nearly as practicable entirely within a single lane." O.C.G.A. § 40-6-391(a)(1); O.C.G.A. § 40-6-48(1). Deputy Gaither received a call that the Plaintiff's speed was suspicious and he was weaving all over the road. Then, when Deputy Gaither located the Plaintiff's vehicle, he saw the Plaintiff drift towards the centerline. Deputy Gaither had at least arguable reasonable suspicion at that time to believe that the Plaintiff was driving under the influence of alcohol and weaving. See United States v. Smith, 318 Fed. Appx. 780, 792 (11th Cir. 2009), citing United States v. Burbridge, 252 F.3d 775, 778 (5th Cir. 2001) ("An ordinary citizen's eyewitness account of criminal activity and identification of a perpetrator is normally sufficient to supply probably cause to stop the suspect.").

Similarly, to establish qualified immunity from Section 1983 liability in the context of an unlawful arrest claim, the Defendants need not demonstrate that they had probable cause to arrest the Plaintiff. Jones v. City of Dothan, Ala., 121 F.3d 1456, 1459 (11th Cir. 1997). Rather, the Defendants are shielded from liability upon evidence that they had "arguable probable cause" to make the arrest. Gold v. City of Miami, 121 F.3d 1442, 1445 (11th Cir. 1997). This lower standard of arguable probable cause is satisfied if a reasonable officer in similar circumstances could have

(11th Cir. 2000). In Georgia, a motorist cannot drive a vehicle while under the influence of alcohol to the extent that it is less safe for the person to drive, and must drive "as nearly as practicable entirely within a single lane." O.C.G.A. § 40-6-391(a)(1); O.C.G.A. § 40-6-48(1). Deputy Gaither received a call that the Plaintiff's speed was suspicious and he was weaving all over the road. Then, when Deputy Gaither located the Plaintiff's vehicle, he saw the Plaintiff drift towards the centerline. Deputy Gaither had at least arguable reasonable suspicion at that time to believe that the Plaintiff was driving under the influence of alcohol and weaving. See United States v. Smith, 318 Fed. Appx. 780, 792 (11th Cir. 2009), citing United States v. Burbridge, 252 F.3d 775, 778 (5th Cir. 2001) ("An ordinary citizen's eyewitness account of criminal activity and identification of a perpetrator is normally sufficient to supply probably cause to stop the suspect.").

Similarly, to establish qualified immunity from Section 1983 liability in the context of an unlawful arrest claim, the Defendants need not demonstrate that they had probable cause to arrest the Plaintiff. Jones v. City of Dothan, Ala., 121 F.3d 1456, 1459 (11th Cir. 1997). Rather, the Defendants are shielded from liability upon evidence that they had "arguable probable cause" to make the arrest. Gold v. City of Miami, 121 F.3d 1442, 1445 (11th Cir. 1997). This lower standard of arguable probable cause is satisfied if a reasonable officer in similar circumstances could have

believed that there was probable cause for the arrest. Id. Arguable probable cause certainly does not require the arresting officer to act as the prosecutor and prove every element of a crime before making an arrest. See Scarbrough v. Myles, 245 F.3d 1299, 1302-03 (11th Cir. 2001) (per curiam).

The probable cause determination focuses on what the arresting officers knew at the time of the arrest. At the time of the arrest, Deputies Gaither and Acosta had accumulated the following information supporting a probable cause determination that the Plaintiff had been driving under the influence of alcohol and weaving: Corporal Smith observed the Plaintiff encroaching upon the right and centerline boundaries and stated he was "all over the roadway"; the Plaintiff drifted towards the centerline while Deputy Gaither was behind him; the Plaintiff swayed while talking to Deputy Gaither; the Plaintiff first stated that he had not drunk alcohol that night and then admitted to having had an alcoholic drink earlier that night; the Plaintiff had dip in his mouth which could mask the smell of alcohol on his breath, and covered his mouth when Deputy Gaither was near; the Plaintiff swayed his hips forward while checking his watch; and the Plaintiff refused a field sobriety test.

The Defendants had information before them making it reasonable for them to believe that the Plaintiff had been driving under the influence of alcohol and weaving at the time they made the arrest. The Plaintiff offered them no other explanation for

his strange behavior and was generally uncooperative. The Defendants had arguable probable cause to arrest the Plaintiff. They are, therefore, entitled to judgment as a matter of law with regard to the Plaintiff's claims for false arrest and false imprisonment and the derivative claims for punitive damages and attorneys' fees.

## IV. Conclusion

For the reasons set forth above, the Defendants' Motion for Summary Judgment [Doc. 22] is GRANTED.

SO ORDERED, this 3 day of October, 2012.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge